IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**KENNETH F. DAVIS**                                                                              **PLAINTIFF**
**ADC #127248**

v.                          **No: 5:18-cv-00001 BRW-PSH**

**JARRED SHERRILL,** *et al.*                                                   **DEFENDANTS**

### PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Recommendation has been sent to United States District Judge Billy Roy Wilson. You may file written objections to all or part of this recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

### I. Introduction

Plaintiff Kenneth Davis, an inmate confined at the Maximum Security Unit of the Arkansas Department of Correction (ADC), filed this *pro se* 42 U.S.C. § 1983 action alleging that he was issued a false disciplinary in retaliation for using the prison's grievance procedure. Doc. No. 2. Davis also alleges that his due process rights were violated during the disciplinary proceedings. *Id.* Davis sues Sergeant Jarred Sherrill, Captain Nicola Kelly, Vineshia Barnes, Warden Danny Burl, Major Carl Stout, and Disciplinary Hearing Officer Lorie Taylor (the "Defendants"). He sues Defendants in both their individual and official capacities and seeks a declaratory judgment

and monetary relief.[1] *Id.* at 2, 17-21. Davis' claims against Barnes were previously dismissed for failure to exhaust administrative remedies. *See* Doc. No. 94.

Davis filed a motion for summary judgment, along with a supporting brief and two declarations. Doc. Nos. 121-123 & 132. Defendants filed a response, along with a brief in support and statement of facts. Doc. Nos. 129-131. Davis' motion should be denied because it is unsupported. The motion simply restates the allegations of Davis' complaint and provides no proof other than a copy of the letter he received reversing his disciplinary conviction.

Defendants filed a motion for summary judgment, a brief in support, and a statement of undisputed facts (Doc. Nos. 125-127). Davis did not file a response. The Defendants' statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute and that Defendants are entitled to judgment as a matter of law.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed

---

[1] Although Davis states that he seeks injunctive relief on page 5 of his complaint, he does not specifically request any form of injunctive relief.

2

must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". FED. R. CIV. P. 56(c)(1)(A).  A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Facts[2]

Davis claims that on March 12, 2017, Sergeant Jarred Sherrill exhibited strange behavior towards him. Doc. No. 2 at 6.  At that time, Davis was housed in administrative segregation in 5 Barracks at the ADC's Maximum Security Unit in Tucker, Arkansas.  *Id.*; Doc. No. 137-1, *Plaintiff's Deposition*, at 10 & 62.  Regarding Sergeant Sherrill's behavior, Davis testified:

> During rounds, [Sherrill] come through there during rounds, and I would be standing at the door.  You know, he'd talk to other little guys around or whatever in the cellblock, and this particular morning he come through and just out of nowhere he asked me like, where do you sleep at?  I'm like, man, what are you talking about.  I'm like, I sleep in my cell, you know.

---

[2] The facts are taken from those submitted by the Defendants which are supported by documents attached to the Defendants' motion for summary judgment (Doc. Nos. 125-1 – 125-14 & 137-1). Although Davis filed his own motion for summary judgment, he did not respond to or refute the facts provided by the Defendants or challenge the admissibility of the supporting documents except to generally assert that the disciplinary he received was not supported by any evidence and that the defendants should have produced video footage of the incident in question.  *See* Doc. No. 132 (referring to Doc. Nos. 118 & 124).

> I find that kind of weird being at an all men's prison. So he would go on. Then he will come through during chow, when he did chow he'd come through, he'd let your trap down, and I don't know if somebody made him mad or whatever. You know, he'd stick the little flap in there and just lay it up and let the trap slam down. . . .
>
> . . .
>
> . . . People admitted to me before that [Sherrill] had bizarre behavior. . . . You know, weird. Some people are naturally just weird. It's people locked up with me that just weird, you know, might do some weird things. I categorized him as he had bizarre behavior.
>
> Yeah, I find [questioning me where I sleep] kind of weird because I'm not going to ask nobody where you sleep at when you know I've got a solid, concrete rack right here, you know, it's all white, you know. But sometimes I do sleep on the floor. That's about it. I'm going to give you the truth.
>
> . . .
>
> Yeah, we had a verbal dispute because I asked him what was going on with him, you know. I don't know, he just come off in way to make you . . .
>
> . . .
>
> He was like – well, there was so much. I was the one doing the verbal dispute, you know. I was the verbal one, and I was like man, get your lieutenant down here, I need to talk to your lieutenant because there's really something wrong, I don't even talk to you, you know, stuff like that. That's about it. He would just get in the middle of the tier and just look back at me, and he would just go on.

*Id.* at 12-14. Davis testified that he believed Sergeant Sherrill violated his constitutional rights during this exchange by asking him where he slept. *Id.* at 28-29, 31 & 67-68. He also claimed that Sergeant Sherrill would routinely open his trap door and allow it to slam back down during his rounds. *Id.* at 12-13. Davis acknowledged that Sergeant Sherrill did not threaten him or physically assault him, but claimed that Sergeant Sherrill's behavior caused him emotional harm. *Id.* at 15, 63-64 & 68-69. Davis also acknowledged that he kept a lot of law work on his bunk and sometimes slept on the floor. *Id.* at 29-31.

4

Davis testified that he told Sergeant Sherrill's supervisor, Captain Nicola Kelly, about Sergeant Sherrill's behavior and she replied that she was aware of it and told Davis not to do anything crazy. Doc. No. 2 at 6; Doc. No. 137-1 at 17-18 & 21. Davis testified that Captain Kelly violated his constitutional rights by leaving him in a situation where he was guarded by Sergeant Sherrill and had to deal with his strange behavior. *Id.* at 25, 27, 29-30 & 61-62.

Davis wrote a grievance about Sergeant Sherrill that day which he later submitted on March 16, 2017 (MX-17-585). *Id.* at 22 & 91-92. That grievance stated:

> The central issue is that of widespread unprovoked attack under SGT Sherril who Supervisor cell block areas 6 & 8. On March 12, 2017 morning chow time SGT Sherril displayed strange behavior toward me for (no) reason at all! I don't play with him in no way barely say anything to him. First of all, as just stated, I inmate Kenneth F. Davis advise captain Kelly; about her subordinate whose behavior violated my constitutional rights. She told me she's aware but don't do anything crazy. This is a code of silence to insulate Captain Kelly of accurate information from failure to protect from violence. SGT Nolden that is over 5 & 7 had been advise also about this matter. It is enough that the captain acted or failed to act despite her knowledge of a substantial risk of serious harm thereto. Several grievances had been file on SGT Sherrill ETC toward his behavior. In light of the undisputed facts, their failure to move this SGT from coming in 5 barracks or discipline amounts to deliberate indifference if anything happen between me and SGT Sherril ETC.

*Id.* at 91. Davis testified that he asked Captain Kelly to sign the grievance but she would not because she was named in the grievance.[3] Doc. No. 137-1 at 33. She told Davis that Lieutenant Willie Carmichael would sign the grievance. *Id.* Davis testified that Captain Kelly violated his constitutional rights by not signing the grievance and sending Sergeant Sherrill to his cell afterwards. *Id.* at 43-44.

---

[3] The ADC's grievance policy provides that no employee should respond to a grievance alleging misconduct by that employee against the inmate unless the inmate still has another step in the grievance process to challenge the conduct or the inmate is alleging indirect misconduct (conduct by omission). Doc. No. 125-9, *Administrative Directive 14-16,* at § IV(H)(6). The policy further states that when an inmate is alleging direct misconduct, such as physical abuse, by the employee, the employee may not respond to the inmate's grievance. *Id.*

5

Captain Kelly recalls Davis complaining to her about Sergeant Sherrill closing his trap on March 12, 2017.[4]  Doc. No. 125-14, *Declaration of Nicola Kelly*, at 2.  She does not recall Davis complaining about Sergeant Sherrill's bizarre behavior.  *Id.*  Captain Kelly does not recall Davis asking her to sign a grievance on March 16, 2017.  *Id.* at 3.  She does recall telling Sergeant Sherrill there were grievances that needed to be picked up that day.  *Id.*  Captain Kelly claims she did not specifically tell Sergeant Sherrill about Davis' grievance.  *Id.*  Captain Kelly also recalled that during this time period, Davis wrote grievances almost every day.  *Id.*

Soon after Davis' conversation with Captain Kelly on March 16, Sergeant Sherrill entered the barracks for a security check.  Doc. No. 137-1 at 35; Doc. No. 125-10, *Declaration of Jared Sherrill*, at 1.  Sergeant Sherrill saw the grievance in Davis' door and read it.  Doc. No. 125-10 at 3.  Sergeant Sherrill claims that Davis told him "to get the fuck away from [his] door."  *Id.*  Sergeant Sherrill says he then saw an object stuck in the locking area of Davis' trap which prevented the trap from closing.  *Id.*  Sergeant Sherrill described the object as a "small silver metallic object that had been altered and wrapped to fit in the trap's locking area in order to keep the lock open."  *Id.*  Sergeant Sherrill says he removed the object and informed Lieutenant Carmichael.  *Id.*

Davis testified that Sergeant Sherrill came to his cell about 10:50 after Captain Kelly left at 10:00 and read his grievance.  Doc. No. 137-1 at 35.  Davis testified that he told Sergeant Sherrill not to sign the grievance.  *Id.*  Davis further testified:

> He just looks at me.  He looked at me, and I was fixing to open my trap.  My trap was already unlocked, so I go to push it, and I just stop.  And he looks at me and he tilts his head and I'm wondering why he's tilting his head.  He handed me the grievance back and he said he got something off the trap, got something off my trap, so he looks at me.  He said, what is this?  I said, what are you talking about?

---

[4] Captain Kelly explained that the inmates' traps are to remain closed at all times. The only exceptions are when an inmate is being removed from his cell and when the inmates are served chow. She stated that this is done to protect the correctional officers from having objects thrown at them by the inmates. Captain Kelly also stated that the inmates, however, like to leave their traps open so that they can hear the television better. *See* Doc. No. 125-14 at 2.

6

*Id.* at 36. Davis testified that he could not make out what Sergeant Sherrill had in his hand. *Id.* Davis said that Sergeant Sherrill also accused him of grabbing him so he began to kick at the solid door. *Id.* at 36-37. Davis explained that a response team arrived because Sergeant Sherrill accused him of grabbing him. *Id.* at 38. Davis said that Lieutenant Carmichael arrived and they discussed what was happening; Davis denied grabbing Sergeant Sherrill, and Lieutenant Carmichael agreed to review a video tape to determine what had happened. *Id.* at 38-40. Davis was not put on behavior control or "put in the hole" as a result of Sergeant Sherrill's allegation that Davis grabbed him. *Id.* at 75.

After the March 16 incident, Sergeant Sherrill issued Davis a disciplinary charging him with violating the following ADC rules: 02-15, tampering with or blocking lock; 11-1, insolence to a staff member; and 12-3, failure to obey order of staff. Doc. No. 125-5, *March 16, 2017 Disciplinary*. Sergeant Sherrill's incident report stated:

> On March 16, 2017 at approximately 10:50 pm I, Sgt. Jarred Sherrill was conducting a security check in 5 barracks Zone 3. I stopped at cell 51 which houses Inmate Kenneth Davis ADC #127248 because he had a grievance sticking out of his door. I retrieved the grievance from his door and began to read at which time Inmate Davis informed me that he did not want me to sign the grievance and to "get the fuck away from my door." When I placed the grievance through the trap I noticed an object stuck in the locking area of his trap preventing it from closing. I reached down and grabbed the object at which time Inmate Davis attempted to grab my hand to stop me from removing it. When I stepped back with the object I observed that it was a small silver metallic object that had been altered and wrapped to fit in the locking area to be able to keep the lock open. I turned back to his cell at which time I asked him what this was and he refused to answer. I exited the barracks and informed Lt. Willie Carmickle of the situation. Therefore I Sgt. Jarred Sherrill am charging Inmate Kenneth Davis #127248 with rule violations 02-15, 11-1 and 12-3 pending DCR.

Doc. No. 125-4, *Incident Report,* at 2. As part of her duties, Captain Kelly reviewed Sergeant Sherrill's incident report regarding the March 16, 2017 disciplinary that he issued Davis. Doc. No. 125-14 at 3. Captain Kelly remembers that Davis asked her for a witness statement, and she

7

wrote "[d]isciplinary stands as written." *Id.*; *see also* Doc. No. 125-4 at 4. Davis claims that Sergeant Sherrill and Captain Kelly conspired to issue him a false disciplinary in retaliation for his writing grievance MX-17-585. Doc. No. 2 at 7-9.

Major Carl Stout was the Chief Security Officer at the Maximum Security Unit. Doc. No. 125-5 at 1. Major Stout reviewed the disciplinaries issued by the correctional officers and decided whether a disciplinary should be referred to the hearing officer. Doc. No. 137-1 at 47. On March 20, 2017, Major Stout referred the disciplinary issued to Davis by Sergeant Sherrill to the disciplinary hearing officer. Doc. No. 125-5 at 1. Davis believes Stout violated his due process rights by not following ADC policy and by signing off on the disciplinary without conducting an investigation or having any supporting documentation. Doc. No. 137-1 at 47-49.

A disciplinary hearing was held March 23, 2017, at which time Davis made a statement to disciplinary hearing officer Lorie Taylor. Doc. No. 125-5 at 2. Davis stated that Sergeant Sherrill accused him of grabbing his hand because he saw that the grievance was about him. *Id.* Davis was found guilty of insolence to a staff member and not guilty on the other charges. *Id.* In her declaration, Officer Taylor explained that she did not find Davis guilty of the tampering with a lock charge because there was no confiscation form or photos of the object Sergeant Sherrill said he found in Davis' trap. Doc. No. 125-11, *Declaration of Lorie Taylor*, at 2. Officer Taylor also found no evidence to support the failure to obey order charge. *Id.* Officer Taylor's explanation for Davis' conviction on the insolence to a staff member charge stated that Davis had told staff to get the fuck away from his door and that staff's eyewitness account was accepted. Doc. No. 125-5 at 3. In her declaration, Officer Taylor also says she considered Sergeant Sherrill's incident report in reaching her decision. Doc. No. 125-11 at 2. As punishment, Davis' commissary, telephone, and visitation privileges were restricted for 20 days. *Id.* at 2. Davis testified that Officer

8

Taylor did not follow ADC policy and violated his due process rights by convicting him of a disciplinary with no supporting documentation. Doc. No. 137-1 at 54-56.

Davis appealed to Warden Danny Burl, Disciplinary Hearing Administrator Raymond Naylor, and ADC Director Wendy Kelley. Doc. No. 125-5 at 5. His disciplinary conviction was upheld until reversed by Kelley. *Id.* Director Kelley reversed Davis' conviction because no confiscation form was provided for the object confiscated by Sergeant Sherrill and there was no photo of the object in the record. *Id.* at 6.

Davis is suing Warden Burl because of his supervisory role and because he was aware of applicable policies that were not followed. Doc. No. 137-1 at 56-57.

### IV. Analysis

*A.     Sovereign Immunity*

Defendants correctly assert that Davis' monetary claims against them in their official capacity are barred by sovereign immunity. A suit against a defendant in his or her official capacity is in essence a suit against the State of Arkansas, and any official capacity claim for monetary damages against that defendant is barred by the doctrine of sovereign immunity. *Will v. Michigan Department of State Police, et al.*, 491 U.S. 58, 71 (1989); *Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989). Davis does not seek any specific injunctive relief. Accordingly, the undersigned recommends that Defendants be awarded summary judgment with respect to Davis' official capacity claims.

*B.     Qualified Immunity*

Defendants assert they are entitled to qualified immunity with respect to Davis' individual capacity claims. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457

U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Defendants argue that Davis cannot prove a constitutional violation.

### *Eighth Amendment Deliberate Indifference Claim*

Davis sues Captain Kelly for deliberate indifference based on her refusal to sign the grievance he wrote or take corrective action with respect to Sergeant Sherrill's offensive behavior.[5] Doc. No. 2 at 10-11. In his deposition, Davis clarified that he believed Captain Kelly's failure to separate Davis from Sergeant Sherrill violated his right to be free from cruel and unusual punishment. Doc. No. 137-1 at 25, 27, 29-30, 43-44 & 61-62. Davis also testified that he believed Sergeant Sherrill violated his constitutional rights by asking him where he slept. *Id.* at 28-29, 31 & 67-68.

Davis has not described an Eighth Amendment violation by Sergeant Sherrill or Captain Kelly. Captain Kelly's refusal to sign Davis' grievance was in accordance with ADC policy and would not implicate the Eighth Amendment in any case. With respect to Sergeant Sherill's behavior, Davis acknowledges that Sergeant Sherrill did not threaten him or harm him – he merely

---

[5] Davis also accuses Captain Kelly of negligence, Doc. No. 2 at 11, but in his deposition, he clarified that he is not bringing any state law claims against the defendants. Doc. No. 137-1 at 9.

acted in a way Davis found odd. Even if Sergeant Sherrill's behavior were insulting or threatening, mere insults or threats generally do not rise to the level of a constitutional violation. *See Hopson v. Fredericksen,* 961 F.2d 1374, 1378 (8th Cir. 1992) (finding officer's use of racial slur and threat to knock prisoner's teeth out was not actionable).[6] The only exception to this rule is when a verbal threat rises to the level of a "wanton act of cruelty" such that the inmate is in fear of "instant and unexpected death at the whim of his allegedly bigoted custodians." *Burton v. Livingston,* 791 F.2d 97, 99–100 (8th Cir.1986). Davis' allegation that Sergeant Sherrill behaved oddly does not approach this threshold, and consequently, Captain Kelly's failure to take corrective action to separate Sergeant Sherrill from Davis is also not actionable. Accordingly, Defendants are entitled to summary judgment on Davis' Eighth Amendment claims relating to Sergeant Sherrill's odd behavior and Captain Kelly's failure to take corrective action.

*Fourteenth Amendment Due Process Claim*

Davis also claims that Major Stout, Officer Taylor, Captain Kelly, Sergeant Sherrill, and Warden Burl violated his due process rights by their involvement with the March 2017 disciplinary and disciplinary hearing. Doc. No. 2 at 13-16. Specifically, Davis claims that Major Stout should not have referred the disciplinary charges to the disciplinary hearing officer; that Officer Taylor did not follow ADC policy and convicted him of a disciplinary charge with no supporting documentation; that Captain Kelly refused to sign his grievance; that Sergeant Sherrill and Captain Kelly fabricated the report that resulted in the disciplinary charges; and that Warden Burl was

---

[6] *See also McDowell v. Jones,* 990 F.2d 433, 434 (8th Cir. 1993) (inmate's allegations of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas,* 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse by jail officials insufficient to state a constitutional violation); *Black Spotted Horse v. Else,* 767 F.2d 516, 517 (8th Cir. 1985) (allegation of racially offensive language directed at a prisoner does not, by itself, state a constitutional claim).

11

aware of applicable policies that were not followed but affirmed his disciplinary conviction anyway.  *Id.*; *see also* Doc. No. 137-1 at 48, 56-57, 66-67 & 69-71.

To prevail on a Fourteenth Amendment Due Process claim, a prisoner "must first demonstrate that he was deprived of life, liberty, or property by government action."  *See Phillips v. Norris,* 320 F.3d 844, 846 (8th Cir. 2003).  A prisoner may maintain a due process challenge to a prison disciplinary proceeding if he is deemed to have a liberty interest at stake.  *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003).  A prisoner has no liberty interest in having certain procedures followed in the disciplinary process; rather, the liberty interest arises from the "nature of the prisoner's confinement."  *Phillips*, 320 F.3d at 847.  An inmate has no liberty interest in avoiding segregated confinement and the suspension of privileges, because such punishment does not create an "atypical and significant" hardship that would give rise to due process protection as set forth in *Sandin v. Conner*, 515 U.S. 472, 482-486 (1995); *Phillips,* 320 F.3d at 847 (thirty-seven days in isolation and loss of privileges of contact visitation, exercise and chapel); *Kennedy v. Blankenship,* 100 F.3d 640, 642-43 & n.2 (8th Cir. 1996) (thirty days suspension of mail, telephone, visitation and commissary privileges).

Davis was already confined in administrative segregation in March 2017.  As a result of the disciplinary conviction, his commissary, telephone, and visitation privileges were restricted for 20 days.  Because that does not amount to an atypical and significant hardship, Davis has no underlying liberty interest and his due process claims must fail.  Furthermore, Davis' claims based on the Defendants' violation of ADC policy also fail to establish a federal due process violation.  The failure to follow prison policy does not state a claim for relief under 42 U.S.C. § 1983.  *See McClinton v. Arkansas Dep't of Corr.,* 166 F. App'x 260 (8th Cir. 2006) (citing *Kennedy v. Blankenship,* 100 F.3d 640, 643 (8th Cir. 1996)).  *See also Gardner v. Howard*, 109 F.3d 427, 430

(8th Cir. 1997) (holding that "there is no § 1983 liability for violating prison policy."); *Williams v. Nix*, 1 F.3d 712, 717 (8th Cir. 1992) ("[T]he mere violation of a state law or rule does not constitute a federal due process violation."). Defendants should be awarded summary judgment on Davis' due process claims.

*First Amendment Retaliation Claim*

Davis alleges that Sergeant Sherrill and Captain Kelly conspired to charge him with disciplinary violations on March 16, 2017, in retaliation for the grievance he filed naming them. Doc. No. 2 at 6-12 & 17.

To succeed on a § 1983 retaliatory discipline claim, the plaintiff must show that: "(1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline." *Meuir v. Greene Cty. Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007). The Eighth Circuit Court of Appeals has made clear that the retaliatory filing of a disciplinary charge constitutes discipline even if a punitive sanction is not imposed as a result of the disciplinary. *Haynes v. Stephenson,* 588 F.3d 1152, 1156 (8th Cir. 2009).

Retaliation for the use of a prison grievance procedure is actionable. *See Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990) (per curiam) (otherwise proper acts are actionable under § 1983 if done in retaliation for grievances filed under established prison grievance procedure). To succeed on a claim of retaliatory discipline, a prisoner must prove that the discipline would not have been imposed *but for* an unconstitutional retaliatory motive. *See Rouse v. Benson,* 193 F.3d 936, 940 (8th Cir. 1999); *Sisneros v. Nix,* 95 F.3d 749, 752 (8th Cir. 1996); *see also Wilson*, 441 F.3d at 592 ("[Plaintiff's] belief that [defendant] acted from a retaliatory motive is insufficient."). A plaintiff cannot prevail if the adverse action was taken with both

legitimate and illegitimate motives. *See Webb v. Hedrick*, 409 Fed. Appx. 33, 35 (8th Cir. 2010) (unpublished opinion) (explaining that a prisoner cannot prevail "if retaliation was one factor" in the defendants' decision to transfer the prisoner); *Ponchik v. Bogan*, 929 F.3d 419, 420 (8th Cir. 1991) (rejecting retaliation claim when retaliation was only one of the factors leading to prisoner's transfer).

The Eighth Circuit Court of Appeals has held that "if the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prisoner rules or regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail." *Goff v. Burton*, 7 F.3d 734, 738 (8th Cir. 1993). *See also Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir.1994) (prison disciplinary committee's finding, based on corrections officer's description of events, that prisoner actually violated prison regulations essentially "checkmate[d]" prisoner's retaliation claim), cert. denied, 515 U.S. 1145 (1995). "Thus, a defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation." *Hartsfield v. Nichols,* 511 F.3d 826, 829 (8th Cir. 2008). Under this standard, "a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decision maker." *Id.* at 831. This rule applies even if the report is written by the correctional officer who is alleged to have engaged in the retaliatory conduct. *Id.*

In this case, Sherrill charged Davis with three rule violations shortly after reading a grievance that accused him of "displaying strange behavior." Doc. No. 125-2 at 1; Doc No. 125-5. Davis was then found guilty of insolence to a staff member based on Sherrill's report that Davis told him to "get the fuck away from his door." *Id.* at 3. Officer Taylor accepted Sherrill's

14

eyewitness account that Davis said this. *Id.* Davis has not disputed that he made this statement.[7] He also does not allege that Officer Taylor was biased in any way (although he complains that she did not follow ADC policy and convicted him without supporting documentation).[8]

To succeed on a retaliatory discipline claim, Davis must prove that Sherrill's only reason to issue the disciplinary was because Davis had named him in a grievance. The record shows that Sherrill wrote the disciplinary, at least in part, because of an actual rule violation – Davis' telling Sherrill to "get the fuck away from my door." That allegation was then accepted by an impartial decision maker. Accordingly, there is some proof to support the disciplinary and Davis cannot prove that Sherrill necessarily issued the disciplinary with a retaliatory motive.

Although the Director of the ADC ultimately reversed the disciplinary charge, she did so based on the lack of any proof that Davis tampered with his lock – Director Kelley said nothing about Sherrill's report that Davis had told him to get away from his door. *See* Doc. No. 125-5 at 6. The Eighth Circuit has held that the later expungement of a disciplinary conviction does not necessarily negate a finding that there was evidence to support a conviction. *See e.g., Moots v. Lombardi*, 453 F.3d 1020, 1023 (8th Cir. 2006) ("The fact that the conduct violation was later

---

[7] Davis did not respond to Defendants' motion or statement of facts but relied on his own motion for summary judgment in which he summarized some of his complaint allegations. Doc. No. 121. The declaration filed by Davis in support of his motion for summary judgment states: "Plaintiff, mention to the court about relevant facts that Sergeant Sherrill knew he didn't have as to code violation 02-15 tampering with, or blocking, any lock or locking device (s)ee plaintiff exhibit B [a copy of Director Kelley's reversal of his disciplinary conviction stating that there was no evidence Davis had tampered with his lock]." Doc. No. 123. Davis' brief in support of his motion for summary judgment also challenged the evidence to support the charge of tampering with a lock but did not mention Sherrill's allegation that he told him to get the fuck away from his door. Doc. No. 122.

[8] It also appears that Davis was afforded due process during his disciplinary proceeding. To meet the requirements of due process for a prison disciplinary hearing, an "inmate must receive: (1) advance written notice of the disciplinary charge, (2) an opportunity to call witnesses and present documentary evidence in his defense, and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). According to the disciplinary report, Linn was notified of the charges, provided an opportunity to present a defense, and provided a statement as to why he was convicted. *See* Doc. No. 125-5.

expunged does not mean that there was not some evidence for its imposition."); *Davis v. Sancegraw*, 850 F. Supp. 809, 813 (E.D. Mo. 1993) ("The fact that plaintiff ultimately had his record expunged of a charge is testimony to the fact that he received due process, rather than proof it was denied."); *Winston v. Stewart*, No. 2:12CV00235-SWW, 2014 WL 1877403, at *5 (E.D. Ark. May 9, 2014), *aff'd sub nom. Winston v. Petty*, 565 F. App'x 577 (8th Cir. 2014) ("The fact that the charges were dismissed later, based on a procedural error and not a substantive finding, does not eliminate the fact that some evidence existed to support the Plaintiff's conviction.").

The same analysis applies to Davis' retaliatory discipline claim against Captain Kelly. Captain Kelly's only role was to review Sergeant Sherrill's report which included the statement Davis made to Sergeant Sherrill. Davis merely speculates that Captain Kelly conspired with Sherrill to issue the disciplinary because she had read the disciplinary that named her a short time before the incident with Sergeant Sherrill occurred. Davis fails to offer evidence sufficient to establish any such conspiracy. The facts do not establish a retaliatory motive sufficient to defeat summary judgment.

## IV. Conclusion

Plaintiff's motion for summary judgment should be denied. Defendants are entitled to sovereign immunity on Davis' official capacity claims. The Defendants are also entitled to qualified immunity as to Davis' individual capacity claims because Davis fails to establish a constitutional violation. The undersigned recommends that Defendants' motion for summary judgment (Doc. No. 125) be granted, and this case be dismissed with prejudice.

DATED this 24th day of September, 2019.

_____
UNITED STATES MAGISTRATE JUDGE